**TEXAS EMPLOYERS' INS. ASS'N v. PERRY.**
**No. 3913.**

Court of Civil Appeals of Texas. Texarkana.
Jan. 1, 1931.

Rehearing Denied Jan. 15, 1931.

1088

Leachman, Gardere & Bailey, of Dallas, for appellant.

Webb & Webb, of Sherman, for appellee.

LEVY, J. (after stating the case as above).

By a timely plea in abatement the appellant sought to abate all that portion of the appellee's claim for compensation for injuries set forth in his petition that he had sustained, excepting the specific injury of hernia. Upon due presentation the plea was overruled by the court, and the ruling is made the basis of error. It is pointed out that no claim for the injuries made the basis for compensation in this suit, except for the specific injury of hernia, had been presented to the Industrial Accident Board before the appeal to the court, and, therefore, the court had no jurisdiction over such new and independent claim made after the appeal to the court. The appellee in his present action alleged that the injuries occasioned to him by lifting the sack of bran were as follows: (1) "A hernia on his right side," and (2) "his back and left side were wrenched and all bones, nerves, tissues, vertebræ, blood vessels, muscles, and tendons, in and about his spinal column and left side were torn, bruised and wrenched, jammed and permanently injured." Then follows the allegation, viz.: "That the said hernia, and the said back and side injuries as above alleged, each and all, acting separately and concurrently, render him totally unfit and incapacitated to labor, or work, to earn money,

and said condition will continue to so exist so long as he may live. He would further show to the court that the back and side injuries above alleged, and each of them, extend to and affect the heart, the lungs and movement of his limbs. That the said hernia extends to other portions of his body, and other organs of his body, affecting and injuring them. That same extends to and affects the digestive organs, the heart, lungs, and other portions of the body, rendering him unfit to labor and work." In his claim made for compensation for injury by the appellee to the Industrial Accident Board, he describes the cause and nature of his injury as follows: "The cause of my injury was by reason of lifting shorts on a truck from the packer. The nature of my injury is as follows: hernia, also pains in back and left side." The claim of injury before the Industrial Accident Board shows, as can be readily seen, that the appellee suffered "hernia" and at the same time suffered "also pains in back and left side." The word "also" preceding the last clause of the sentence indicated an intention to include something not theretofore included. A meaning of "also" is "besides," "in addition to." In such interpretation it may not be concluded that the appellee's claim before the board was intended to be confined to the injury merely of hernia. Nor can it be concluded that the appellee intended to claim as injuries only such pains to the back and left side as directly followed or originated from the hernia. The claim before the board can fairly be regarded as intended to describe concurrent hurts sustained to other parts of the body independent and exclusive of the injury resulting in the hernia and the pain accompanying hernia. In this view, then, the appellee had the right in his present petition by proper allegations to amplify or make more specific the hurts which were only generally described in the claim of injury presented to the Board. Texas Employers' Insurance Ass'n v. Knouff (Tex. Civ. App.) 271 S. W. 633; Texas Indemnity Insurance Co. v. Wilson (Tex. Civ. App.) 281 S. W. 289. He would not be confined by the law to compensation for the injury resulting in hernia, if proof, admitted under proper allegations, showed other compensable hurts. United States Fidelity & Guaranty Co. v. Pogue (Tex. Civ. App.) 21 S.W.(2d) 43.

█ It is further pointed out by the appellant that the present allegations of the appellee's petition went further and were greatly broader than mere amplification of the injuries claimed before the board, in describing the injuries affecting the back and side, and lungs and heart. As will be observed, the word "pains" was, as used in the claim, compounded with words expressing the place as "back" and "left side," evidently intending thereby a general description of injuries sustained in the places so specified. A wrenched back may cause a backache or local pains in the whole of the back, and a strained left side may cause local pains in the entire left side of the body, including the related organs of the heart and lungs. The allegations, though broad, would not necessarily constitute injuries to other and distinct places of the body than those included in the claim of injuries made before the board.

█ Over timely objection of the appellant the appellee offered in evidence certified copies of (1) "notice that employer has become subscriber" and (2) "notice of renewal of compensation insurance." The first instrument recites as follows:

"Notice that Employer has Become Subscriber.

"The Industrial Accident Board, Austin, Texas.

"Gentlemen: Notice is hereby given as required by the employers' Liability Act, Chapter 103, General Laws 1907, and amendments thereto, that G. B. R. Smith Milling Company of ———— Street, Sherman, Texas, has become a subscriber under said Act and amendments thereto and provided for the payment of compensation to employees under the terms and provisions thereof by insuring with Texas Employers Insurance Association.

"Occupation milling of grain. Approximate number of employes 50.

"Estimated annual pay roll ——— Policy No. C8978

"Date effective 7—1—28. Hours effect 12:01 A. M.

"Policy expires 7—1—29.

"[Signed] G. B. R. Smith Milling Company
"By J. S. Smith, Pres.

"(Received June 6, 1928, Industrial Accident Board State of Texas.)"

Accompanying this notice was a separate notice purporting to have been given to the Industrial Accident Board by another party than the milling company.

The second instrument reads as follows:

"Notice of Renewal of Compensation Insurance.

"Industrial Accident Board.
"Austin, Texas.

"The Industrial Accident Board is hereby given notice of the renewal of policy of insurance by the undersigned under the terms and provisions of the Employers' Liability Act to

"Employer: G. B. R. Smith Milling Company

"Address, Sherman, Texas.

"Occupation: Milling of grain.

"Former Insurer: Texas Employers' Insurance Ass'n

"Date of cancellation or expiration of old policy Number C8978

"Date effective 7—1—28. Hour effective 12:01 A. M.

"Date of expiration 7—1—29. Hour of expiration 12:01 A. M.

"Present Insurer: Texas Employers Insurance Ass'n

"Dated at Dallas, Texas, this 28th day of May, 1928.

"Note: If more than one place of business is conducted under same name, use separate blank for each. This form must be executed by the insurance carrier promptly upon the renewal of a policy of insurance under the employers Liability Act, and mailed to the Industrial Accident Board, Austin, Texas.

"(Received May 30, 1928, Industrial Accident Board State of Texas.)"

The instruments were all certified to by the secretary of the Industrial Accident Board as true copies on file with the board. The appellee alleged that the association was the insurer, and demanded that the insurer association produce the policy of insurance on the trial. The association pleaded a general denial. The appellee offered the two instruments to show that at the time he sustained his injuries his employer was a subscriber to the Workmen's Compensation Law, and that the appellant insurance association was his employer's insurer.

Objections of the appellant as recited in the bill of exceptions read: "That the same was irrelevant and immaterial; that it was an ex parte statement made without the knowledge, consent or sanction of this plaintiff, and by the party at a time when the plaintiff was not afforded an opportunity to cross-examine the party on the things set forth in the instrument."

██ It is believed that the trial court did not err in overruling the objection of the appellant that the documents offered in the evidence were "irrelevant and immaterial." The evidence is fit and appropriate proof and the character of proof which the law permits in the case. The burden of evidence as recited in the documents and which appellee offered to prove was upon the appellee, that his employer was a subscriber to the Workmen's Compensation Law and had insurance, and that the appellant association was the insurance carrier. By express terms of the Workmen's Compensation Law the employer of labor and insurance carrier, each and separately, are required to make and submit to the Industrial Accident Board a notice and report, or writing, in which are embodied certain facts and doings of the kind and character reflected in the above documents. Article 8308, § 18a. The evident purpose of the statute in having such memorandum in writing, made at the time when such facts it records took place, was to assist the Industrial Accident Board in the proceedings before the board, and to constitute it a relevant and legitimate part of the public record of the board. The statute expressly provides that any person entitled thereto may obtain a copy duly attested by the secretary of the board of the contents of any "paper on file in the office of said board," or "proceeding before said Board." Article 8307, §§ 8 and 9. And it is believed that the statute expressly determines the question of whether the contents of these documents may be proved by copies duly verified. Section 8, Art. 8307; Texas Indemnity Insurance Co. v. Wilson (Tex. Civ. App.) 281 S. W. 289. The documents offered in evidence may be classed as a copy of "proceedings before the Board" because of the original memorandum recording facts which were necessary to be inquired into and taken notice of by the board in making an award in the first instance. In making an award, the board is manifestly required to consider facts such as that the employer was a subscriber to the law and had insurance and what company was the insurance carrier. It is a rule of wide application that those records and papers placed with boards and public agencies, which are public in their nature and the public have the right to inspect, may be proved by duly authenticated copies. Article 3730, R. S.; Smithers v. Lowrance, 100 Tex. 77, 93 S. W. 1064.

██ The further objection that the documents offered "was an ex parte statement made without the knowledge, consent or sanction," etc., of the appellant was also properly overruled by the trial court. The first instrument purporting on its face to have been formally made by the president of the milling company was offered as to the milling company as proof against it. The declarations made therein were declarations required of the company in the due course of business. The fact that the declarations made were such as the law required of the company to make, and were made by its president, carries with it the suggestion of apparent authority of the president to act, and he was not wrongly assuming to bind his principal. The second instrument above set out was separately offered and only as to the appellant as proof against it. This copy revealed that the recitals of the original instrument on file with the board were made upon a form appearing on its face to be official and in behalf of appellant and concerning transactions in the course of its business. The "note" stated that "this form must be executed by the insurance carrier promptly upon the renewal of a policy," etc. This copy further purported to show that a report was made to the Industrial Accident Board by the "Texas Employers Insurance Ass'n" as "present insurer" and as "former insurer" of the "employer G. B. R. Smith Milling Co.," of the fact "of the renewal of policy of insurance by the undersigned under the terms and provisions of the Employers' Liability Act." The name of the

"Texas Employers' Insurance Ass'n" appears twice in the body of the instrument. It is clear that the instruments above referred to were not subject to the objections of being within the rule of hearsay statement or "ex parte statement made (by some one else) without the knowledge, consent or sanction of appellant," since the two instruments were offered separately and distinctly and only against each maker thereof. They were separately offered as the memorandum made and filed by each party as required of them by law. Although the second instrument may appear informal or defective with respect to execution, yet it is not so defective as to enable the court to say as a matter of law that the original was a nullity. The ground of objection does not reach to the manner or form of the execution of the original instruments or that no extrinsic evidence was offered to explain the defects or in proof of agency as a prerequisite to the admission of the writings.

 The appellee was asked the question: "Now, before this injury had you ever had that hernia in any degree at all?" The objection made to the question was that it called for a conclusion and invaded the province of the jury. The court overruled the objection, and the answer of the witness was, "No, sir." It is believed that there was no error in the ruling of the court as the question involved purely a fact affecting the weight and credibility, and not the competency of the evidence.

 The appellant predicates error upon the refusal of the court to submit certain special issues seeking to have the jury determine whether or not the injuries suffered by Hugh R. Perry, "independent and exclusive of the hernia," caused him to be incapacitated for work, either permanent or temporary, and, if temporary, the number of weeks it would last. The appellant claims that the injuries should have been determined separately in view of the following provision of Section 12 of article 8306 which was applicable: "Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; but this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent." It is believed that in this case error may not be predicated upon the ruling of the trial court in refusing to submit the three issues above complained of. By the court's charge the jury were required to find whether or not appellee sustained (1) "a hernia," and (2) "concurrent injuries to

more than one portion or part of his body," and then to find whether or not such "injuries, if any," resulted in "total incapacity to work," and whether or not such total incapacity to work was "permanent," or, if not, the "period of time it would last." The jury were still further asked to find, viz.:

"Q-5. What will be defendant's (Hugh R. Perry) percentage of incapacity, if any, to labor following his period of total incapacity to labor?

"Q-6. For what period of time will defendant's (Hugh R. Perry) period of incapacity referred to in Q-5 last?"

In view of the appellee's alleged claim for compensation, all of these questions were broad enough to cover all findings necessary as a basis for compensation under sections 10 and 11 of article 8306.

The appellee's claim for compensation was not based on two distinct injuries, each made specific injuries under the law, nor upon two distinct injuries which were different in character and which were not both together partially or totally disabling for work. He expressly claimed that he sustained internal hurts in different portions of the body in the one accident, and that all of such hurts together as a single injury totally and permanently disabled him for work and unfitted him from earning substantial wages. The jury's findings being in support of appellee's contentions, the court, as allowable for him to do, fixed the compensation under section 10 of article 8306. The provision of law relied upon by the appellant, and as above set out, is a part of the act of 1917 (Acts 1917, p. 274), amending the law of 1913 (Acts 1913, p. 431). The law of 1913 did not contain the provision above quoted. The object of the present provision is evidently to limit, as was not done before the amendment, the compensation for the specific injuries set forth in the preceding sections so far as not to permit double or concurrent compensation. The claimant would not be entitled to receive his average weekly wages for each distinct injury, which was different in character, and which were not both together partially or totally disabling for work. This provision would not have application to the appellee's present claim, restricting him to compensation for the longest disability, for he did not in any wise claim two injuries different in character, and which were not both totally or partially disabling for work. He claimed only that the hernia, which was not an injury specially scheduled in section 12, and the other bodily hurts together constituted permanent and total disability for work. And even though the jury had found, as the court's charge authorized, his injuries all together had resulted in partial disability for work, his compensation would have been measured nevertheless by section 11.

We have considered all the remaining assignments of error and concluded that they should be overruled.

The judgment is affirmed.