TRADERS & GENERAL INSURANCE COMPANY V. T. J. BULIS.

No. 6860.   Decided May 5, 1937.
(104 S. W., 2d Series, 488.)

363

*Will R. Saunders,* of Amarillo, *Lightfoot & Robertson* and *Nelson Scurlock,* all of Fort Worth, for plaintiff in error.

Where the facts reveal that an employee had been for several years engaged in work which was irregular and intermittent and that he and other employees engaged in similar employment worked for less than 300 days throughout the year immediately preceding the injury, it would be unfair to figure the average annual wage at 300 times the average daily wage which other employees received while actually employed, because such annual wages when divided by 52 fixes an average weekly wage which is not commensurate with the facts, in that the rate of compensation resulting from such calculation is more than the employee could reasonably expect to earn if actually employed. Casualty Reciprocal Exchange v. Stephens, (Com. App.) 45 S. W. (2d) 143; Texas Emp. Ins. Assn. v. Storey, (Com. App.) 17 S. W. (2d) 458; Texas Emp. Ins. Assn. v. Sloan, 36 S. W. (2d) 319.

*Hubert Foreman,* of Rankin, *J. B. Cotton,* of Crane, and *Hudson & Hudson,* of Pecos, for defendant in error.

Where the average weekly wage has been proven, and the evidence showed that plaintiff did not work the whole of the year preceding the accident the actual earnings of plaintiff for such year preceding his injury is immaterial and not the basis of compensation. American Emp. Ins. Assn. v. Singleton, 24

S. W. (2d) 26; American Emp. Ins. Assn. v. Hookfin, 33 S. W. (2d) 801.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

In the trial court, T. J. Bulis recovered judgment against the Traders & General Insurance Company for compensation under the Workmen's Compensation Law for an injury sustained by him in the course of his employment. The judgment has been affirmed by the Court of Civil Appeals. 75 S. W. (2d) 965.

No complaint is made in this Court except in relation to the method applied by the trial court in determining the average annual wages of Bulis, as hereinafter explained. For this reason we shall state the facts only so far as they bear on this question. On March 6, 1933, and for several years prior to that date, Bulis, a rig builder by trade, was in the employ of P. O. Sill as rig builder. Sill was a contractor engaged in the business of constructing and dismantling oil well rigs, and repairing other structures pertaining to oil wells, in the various oil fields of Upton County and neighboring counties. On March 6, 1933, Bulis was injured in the course of his employment in Upton County. During the period of twelve months immediately preceding the injury, Bulis, because of the intermittent character of the work pertaining to his employment, as hereinafter explained, did not work but about two thirds of the time. The work of his employment was as steady as that of any other rig builder in said oil fields. The work of a rig builder, such as Bulis, is intermittent in character, in that same depends on his employer procuring jobs of work to be done. Intermissions of varied duration between jobs occur at irregular intervals throughout the calendar year. A rig builder is paid by the day for his work. The rate ranges from $5 to $10 a day. The state of affairs just described prevailed in all said oil fields, during the entire period of twelve months immediately preceding the date Bulis was injured. There is no evidence to show that any rig builder, working in the same or similar employment, in any of the oil fields, worked substantially as much as 300 days during said twelve month period. There is some evidence tending to show that rig builders generally, in that section of the State, work every day, including Sundays and holidays, whenever there is work in their employment to do.

The trial court, among other special issues, submitted to the jury the following issue:

"What, if any, do you find from a preponderance of the evidence in this case was the average daily wage of an employee

of the same class as T. J. Bulis, working substantially the whole of the year immediately preceding March 6th, 1933, in the same or in a similar employment to that of T. J. Bulis, in Upton County or neighboring places? Answer by stating the amount, if any."

The jury answered: "$6.00." Basing its action on this finding of the jury the trial court, in determining the average annual wages of Bullis, computed same by multiplying said sum of $6.00 by 300. In other words, the court, in reaching judgment, applied subdivision 2 of Section 1 of Article 8309 of the Revised Statutes. Although subdivision 1 of the same section is admittedly not applicable to the facts of this case, it is set out below, along with subdivision 2, in order that both subdivisions may be read together. Subdivision 3 and subdivision 5 will be set out for the same reason. The four subdivisions read as follows:

"1. If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties.

" *   *   *

"5. The average weekly wages of an employee shall be one-fifty-second part of the average annual wages. * * *."

1  The term "substantially the whole of the year immediately

preceding the injury," as used in subdivision 1 is, by reference, carried forward into subdivision 2, and wherever used in either subdivision means substantially a year of labor, consisting of substantially 300 days of labor, during the twelve months immediately preceding the injury. Casualty Co. v. Williams, 15 S. W. (2d) 553. It is settled, too, that before the average annual wages of the injured employee can be computed in any case, under either of the methods prescribed, the facts upon which the computation is based must be proved. American Employers' Insurance Co. v. Singleton, (Com. App.) 24 S. W. (2d) 26.

2 Careful consideration of the undisputed facts contained in the record before us, leads to the conclusion that they show, as a matter of law, that neither Bulis nor any other employee of the same class, working in the same or similar employment, in any of said oil fields, worked substantially as much as 300 days during the period of twelve months immediately preceding the date Bulis was injured. Even by accepting as true, as should be done, all favorable facts which any evidence contained in the record tends to show, as well as all such facts directly shown, still the greatest number of days which either Bulis himself, or any other employee of the prescribed class, worked during the said twelve month period would be substantially less than 300 days, to-wit: about 243 days. In view of the record before us, it is evident that whatever compensation Bulis is entitled to recover the same should have been computed under subdivision 3 of Article 8309, supra. A reading of this subdivision will disclose that it is very general in its provisions as to what shall be taken into consideration by the Board in computing the average weekly wage thereunder. It simply provides that the average weekly wage thereunder "shall be computed by the Board in any manner which may seem just and fair to both parties." Under such provision no hard and fast rule can be announced that will govern the Board in all instances. The statute clearly intends to clothe the Board with broad discretionary powers in considering matters that bear on the question to be determined. The Board may hear evidence regarding what the injured employee earned the year previous to his injury, and, further, it may hear evidence bearing on any other pertinent matter which may aid it in doing what is just and fair to both the injured employee and the insurance carrier.

We conclude that the trial court erred in applying to the facts of this case the provisions of subdivision 2.

The judgments of the trial court and that of the Court of Civil Appeals are reversed, and the cause is remanded.

Opinion adopted by the Supreme Court May 5, 1937.